IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Mitchell Johnson, #243939, ) | |
| ) | Civil Action No. 6:10-1772-CMC-KFM |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Gregory Knowlin, Warden, ) | |
| ) | |
| Respondent. ) | |
| ———————————————————) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently confined at the Turbeville Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Horry County. The petitioner was indicted by the Horry County Grand Jury during the March 1997 Term of the Court of General Sessions for criminal conspiracy (1997-GS-26-638) and assault and battery with intent to kill (1997-GS-26-638); and during the June 1997 Term of the Court of General Sessions for armed robbery (1997-GS-26-1461) (R. 243-46). The petitioner was represented by Paul Rathbun, a public defender for Horry County (R. 1-242). The State was represented by Assistant Solicitors Caroline F. Fox and Roger Roy of the Fifteenth Judicial Circuit. *Id.* On September 9-10, 1997, the petitioner proceeded to a trial by a jury and was found guilty of

all charges (R. 236).  The Honorable Sidney T. Floyd, Circuit Court Judge, sentenced the petitioner to 20 years confinement on the armed robbery conviction, 20 years confinement for the assault and battery with intent to kill conviction to run consecutive to the armed robbery sentence, and five years confinement on the criminal conspiracy conviction to run concurrent to the other sentences (R. 240-41).

### UNDERLYING FACTS[1]

On November 11, 1996, D was working at the Sunshine Grocery store in Duford.  A man wearing a hooded sweatshirt and carrying a gun walked into the store around 8:00 p.m.  A second man, later identified by D as the petitioner, walked in wearing a hooded sweatshirt and a red bandana that covered his face from the nose down.  The petitioner pulled out a gun, pointed it at D, and told D to "[g]ive it up" and "[o]pen up the cash register."  D opened the cash register and stepped away.  The petitioner reached across the counter, grabbed the cash register drawer, and demanded to know where the rest of the money was.  D responded "[t]here is no more [money]. I promise."  Both men then fired their guns and escaped.  D was shot in both legs and his abdomen.

When Officer Terry Elliott arrived on the scene minutes later, D described the robbers as two "skinny" black males, five-six to five-eight inches tall.  At trial, D testified that the entire incident from the time the men first walked into the store lasted approximately one minute.

Officer Elliott talked to a confidential informant during the robbery investigation.  The confidential informant's information led Officer Elliott to investigate the petitioner and two other men as suspects in the robbery.

---

[1]These are the facts as stated by the South Carolina Court of Appeals in its unpublished opinion.

2

Detective Diane Johnson prepared a photographic lineup using six photographs from a high school annual. Detective Johnson did not know what high school annual the photograph was taken from, when the photograph was taken, by whom the photograph was taken, or the petitioner's age in the photograph.[2] In choosing the photographs, Detective Johnson focused on individuals of the same race and age of the petitioner and with similar facial features. Detective Johnson did not place any names with the photographs.

Approximately four days later, Detective Johnson showed D the photographic lineup.[3] Detective Johnson instructed D not to take any pain medication on the day of the lineup. Detective Johnson handed D the lineup, stated that the suspect "may or may not be" in the lineup, and did not suggest which photograph to choose. D then looked through the photographs, one at a time. At the time D was shown the lineup, D was unaware that the petitioner was a suspect.

D positively identified the petitioner from the lineup as the second man who walked into the store wearing the hooded sweatshirt and red bandana who pulled the gun on him and robbed him. D had no difficulty picking the petitioner from the lineup.

On November 18th, the petitioner gave a taped statement to Officer Russell Jordan and Detective Johnson. Initially, the petitioner denied any involvement in the

---

[2]The petitioner's former employer, Danny Hammond, testified that the petitioner appeared to be 13 or 14 years old in the photograph. D testified that the petitioner appeared to be approximately 18 or 19 years old in the picture. Detective Johnson testified that the petitioner appeared to be 17 or 18 years old in the photograph. At the time of trial, the petitioner was approximately 24 or 25 years old.

[3]The photographic lineup form read as follows:

"You will be asked to look at several photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude nor guess that the photographs contain the picture of a person who committed the crime. You are not obliged to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties."

3

robbery. He eventually admitted being at the scene but stated that two other men committed the robbery and shooting. The petitioner later recanted the statement. No weapon was ever recovered, and no fingerprints were found at the scene.

**Direct Appeal**

The petitioner's trial counsel timely filed a Notice of Appeal on September 17, 1997. On appeal, the petitioner was represented by Tara S. Taggart, Assistant Appellate Defender with the South Carolina Office of Appellate Defense. The petitioner's direct appeal was perfected with the filing of a Final Brief of Appellant. In the Final Brief, the petitioner argued the photographic line-up was unduly suggestive and conducive to irreparable mistaken identification.

In an unpublished opinion filed March 23, 1999, the South Carolina Court of Appeals affirmed the petitioner's convictions. In the opinion, the Court of Appeals noted that at trial, the petitioner moved to suppress any evidence of the photographic lineup. The trial judge denied the petitioner's motion to suppress, finding the photographic lineup was not impermissibly suggestive. The petitioner contended that the trial judge erred in denying his motion to suppress the photographic lineup because the lineup was unduly suggestive. The Court of Appeals disagreed, finding that the photographic lineup procedure was not unduly suggestive. Detective Johnson testified that when assembling the photographic lineup, she searched for a "minimum of six photographs with individuals with similar characteristics such as in this case here, black males, approximately the same age, no facial hair." The photos were of a uniform size and had the same background color.

D testified that Detective Johnson did not stand over him while he looked through the photos. He did not know whether any suspects were in the photos. He was not told that the petitioner was one of the suspects. The Court of Appeals found that these factors helped to indicate the non-suggestive nature of the procedure. *See Simmons v. United States*, 390 U.S. 377 (1968) (Lineup was not unduly suggestive where each witness

4

was alone when viewing the photographs, where there was no evidence to indicate that the witnesses were told anything about the progress of the investigation, and where FBI agents in no other way suggested which persons in the pictures were under suspicion). *See also State v. Washington*, 432 S.E.2d 448 (S.C. 1993) (no evidence that the identification procedure was unnecessarily suggestive); *State v. Stewart*, 272 S.E.2d 628 (S.C. 1980) (no error in admission of identification testimony).

The remittitur was issued on April 8, 1999.

### First PCR Action

The petitioner filed an application for post-conviction relief ("PCR") on November 26, 2001 (2001-CP-26-5923) alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and after-discovered evidence of innocence (App. 1-7). Specifically, the petitioner asserted trial counsel was ineffective because of an inadequate investigation and trial preparation and any additional grounds asserted by my attorney; appellate counsel was ineffective for failing to file a petition for rehearing and a petition for a writ of certiorari; and the after-discovered evidence consisted of someone else confessing to the crime (App. 3). The State filed its return on October 2, 2002. (App. 8-12).

A hearing in this action was held on September 21, 2004, before the Honorable B. Hicks Harwell, Circuit Court Judge (App. 13-25). The petitioner was present, and he was represented by attorney R. Scott Joye. *Id.* Assistant Attorney General Adrianne L. Turner represented the State. *Id.* At the hearing, it was decided that the petitioner would exhaust his claim of ineffective assistance of appellate counsel, and then if he lost on appeal, he could file a second application for PCR to challenge the assistance of counsel he received from trial counsel (App. 22-24).

In an order filed December 7, 2004, the PCR court noted this matter came before it on September 21, 2004, upon the filing of the PCR action by the petitioner. This matter was previously before the PCR court on March 5, 2003, before of the Honorable

5

Paula Thomas.   Prior to that hearing, the attorneys for both the petitioner and the respondent agreed that Tara Taggart of the South Carolina Office of Appellate Defense had failed to file an appeal on behalf of the petitioner after the Court of Appeals affirmation of conviction on March 23, 1999.  The petitioner stated that Tara Taggart failed to file an appeal from the Court of Appeals to the South Carolina Supreme Court, and therefore, based on Ms. Taggart's affidavit, he had ineffective appellate counsel.  An order was prepared for Judge Thomas and sent for her review on June 20, 2003.  However, the Attorney General's Office then opposed, what was previously understood to be a consent order, to find ineffective assistance of appellate counsel.  It also appeared that the Attorney General's Office contacted Judge Thomas and had her reset this case for a hearing based on the fact that it was the Attorney General's position that they could not consent to the ineffectiveness of Ms. Taggart, but would stipulate that they had no grounds to fight such an issue as it was clearly apparent that Ms. Taggart was ineffective due to her failure to file a petition for a rehearing and/or a final appeal to the Supreme Court on the issues raised at the hearing.

At that time, Judge Thomas never signed the order, and this case was placed upon the roster again for April 29, 2004. Also at that time, the petitioner's attorney had been granted leave of the court by order of protection.  This matter again appeared before the PCR court on July 30, 2004.  The PCR court directed then Assistant Attorney General Christopher Newton and petitioner's counsel to contact Judge Thomas regarding the old outstanding order from 2003.  After contacting Judge Thomas, she stated to petitioner's counsel that the matter had never been resolved in her court and, therefore, was properly in the jurisdiction of Judge Harwell.

Prior to the hearing on this matter on September 21, 2004, Judge Harwell asked the respective positions of both parties. Adrianne Turner, Assistant Attorney General, stated that she was not stipulating on the record to Ms. Taggart's ineffectiveness, but

6

certainly had no way of fighting those grounds. The petitioner and his attorney were prepared to go forward; however, the PCR court deemed it proper, because Ms. Taggart failed to file for a petition for a rehearing in front of the Appellate Court or for a final hearing for the South Carolina Supreme Court, to find for the petitioner on the grounds of insufficient assistance of appellant counsel.

The PCR court found that the petitioner should be granted his PCR for ineffective appellate counsel as was provided in the previous order presented before Judge Thomas in June 2003. Further, the PCR court found that as the petitioner had not exhausted his appellate remedies, the underlying PCR action on ineffective assistance of trial counsel was not properly before the PCR court. Therefore, it was ordered that the PCR action on ineffective assistance of trial counsel, at that time, was not properly before the PCR court unless and until all appellate remedies had been exhausted and, therefore, no prejudice would attach to his underlying PCR of trial counsel and the statute of limitations for filing such action would not apply (12/7/04 Order).

The petitioner filed a notice of appeal on December 9, 2004. In an order filed February 3, 2005, the South Carolina Supreme Court filed an order remanding the petitioner's case back to the PCR court. In the order, the Supreme Court stated that on October 15, 2004,[4] the petitioner's PCR application was granted on the ground that petitioner's appellate counsel was ineffective for failing to file a petition for rehearing in the Court of Appeals or a petition for a writ of certiorari in the South Carolina Supreme Court from an opinion of the Court of Appeals affirming petitioner's conviction.[5] The PCR judge

---

[4]Judge Harwell signed the order on October 15, 2004, but it was not filed until December 7, 2004.

[5]*But see Poston v. State*, 528 S.E.2d 422 (S.C. 2000) (holding PCR judge erred in finding applicant did not knowingly and intelligently waive his right to file a petition for a writ of certiorari pursuant to Rule 226, SCACR, following the Court of Appeals' affirmance of his conviction because a petition for a writ of certiorari to the Court of Appeals is a discretionary appeal, not an appeal to which the applicant was entitled to as a matter of right).

7

did not rule on the petitioner's allegations of ineffective assistance of trial counsel, finding they were not properly before him "unless and until all appellate remedies have been exhausted."  The court noted that petitioner's PCR counsel served and filed a notice of appeal.

The South Carolina Supreme Court further noted that Rule 227(a), SCACR, states that a final decision entered in a PCR matter will be reviewed by the court on petition of either party for a writ of certiorari.  South Carolina Code Annotated § 17-27-80 (2003) states that a final judgment is an order that contains specific findings of fact and states expressly the PCR judge's conclusions of law relating to each issue presented.  *See also* S.C. Code Ann. § 17-27-100 (2003)("A final judgment entered under this chapter may be reviewed by a writ of certiorari as provided by the South Carolina Appellate Court Rules.").

Because the order on appeal did not include findings of fact and conclusions of law on the allegations of ineffective assistance of trial counsel raised by the petitioner, it was not a final judgment.  Accordingly, the Supreme Court dismissed the appeal without prejudice and remanded the matter to Judge Harwell for an evidentiary hearing and the issuance of an order that included findings of fact and conclusions of law with regard to the petitioner's allegations of ineffective assistance of trial counsel and appellate counsel (2/3/05 Order).  The remittitur was issued on February 23, 2005.

An evidentiary hearing was held in this matter on March 8, 2005, before Judge Harwell (App. 43-128).  The petitioner was present and was represented by attorney R. Scott Joye.  *Id.*  Assistant Attorney General Christopher Newton represented the State. *Id.*  The PCR court filed its order of dismissal on March 30, 2005 (App. 141-49).

In its order, the PCR court noted it had had the opportunity to review the record in its entirety and had heard the testimony at the PCR hearing (App. 143).  The court further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly.  *Id.* Regarding the petitioner's

8

claim of ineffective assistance of appellate counsel, the respondent submitted that its representative at a previous hearing had agreed to the grant of a belated petition for rehearing based on the assertions of appellate counsel Tara Taggart and would not therefore oppose the petitioner's claim in this regard. (App. 143). Therefore, the court found that the petitioner was entitled to a belated petition for rehearing because he did not voluntarily waive his right to a full "bite at the apple" in the appellate process. *Id.*

The respondent first moved for summary dismissal of the petitioner's claims of ineffective assistance of trial counsel on the grounds that they were barred by the statute of limitations. See S.C. Code Ann. § 17-27-45(a) (2003) (App. 143). This court found this motion to be proper and correct (App. 143). The petitioner was convicted on September 10, 1997 (App. 143-44). The remittitur in his direct appeal was issued on April 8, 1999 (App. 144). He would have been required to file his application for PCR by April 8, 2000. *Id.* This application was filed on November 26, 2001, well beyond the prescribed time. *Id.*

The petitioner asserted that the statute should be tolled based on his appellate counsel's failure to timely notify him of the denial of his direct appeal (App. 144). The court did not find this excuse to be persuasive in light of the clear language of the statute and the evidence presented in this case. *Id.* From the evidence presented to the court, the petitioner did not attempt to communicate with his appellate counsel about his appeal for over two and half years during the course of his appeal. *Id.* The court found that even presuming appellate counsel ineffective, the petitioner himself must bear some obligation to keep himself apprised of his appeal. *Id.* Such information is public record and can be discovered through either communication with his appellate counsel or with the appellate court itself. *Id.* The petitioner did not even attempt to communicate with either appellate counsel or the court for over two years. *Id.* In such a situation, the petitioner was not entitled to equitable tolling in the face of clear statutory language. *Id.* The court then

granted the State's motion to dismiss the claims of ineffective assistance of trial counsel as barred by the statute of limitations.  *Id.*

The court further found that even if the petitioner had filed in a timely manner, his grounds for relief based on ineffective assistance of counsel were without merit (App. 144).   In a PCR action, the applicant has the burden of proving the allegations in the application.  Rule 71.1(e), SCRCP; *Butler v. State*, 334 S.E.2d 8, 13 (S.C. 1985) (App. 144-45).  Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984) (App. 145).

The court further stated that the proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases (App. 145).   The court also noted that courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  The applicant must overcome this presumption to receive relief.  *Id.* Judge Harwell noted that courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel (App. 145).  First, the applicant must prove that counsel's performance was deficient, and, second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"  (App. 145).

The court found the petitioner's testimony on the issues in this case was not credible and that the testimony of trial counsel was credible on these issues (App. 145). The petitioner first claimed that his trial counsel failed to fully investigate the possibility of third-party guilt.  *Id.* He claimed that two other people, Jeffrey Jordan and Darryl Green, from the same area with appearances similar to that of the petitioner and his codefendant were incarcerated on similar offenses.  *Id.*  The petitioner believed that they had committed

10

the crime, but could offer nothing to confirm this assertion other than hearsay, which the court cannot consider, and speculation due to the similarity of the other parties' appearance to his own (App. 145-46). These witnesses did not testify at the hearing, and thus the petitioner could not and did not meet his burden of showing prejudice. *See Bannister v. State*, 509 S.E.2d 807 (S.C. 1998); *Glover v. State*, 458 S.E.2d 538 (S.C. 1995); *Clark v. State*, 434 S.E.2d 266 (S.C. 1993); *Underwood v. State*, 425 S.E.2d 20 (S.C. 1992) (App. 146).

The petitioner further claimed that his trial counsel did not raise the issue of cross-racial identification to the trial court (App. 146). Trial counsel admitted this, but stated that he made a strategic decision not to do so based on the testimony and the facts surrounding the case. *Id.* Trial counsel testified that the victim in the case lived in the Green Sea Floyds area of Horry County, which was an area where the population at the schools and in the community was roughly 50% African-American and 50% white. *Id.* Based on that community dynamic, trial counsel stated that he did not believe a challenge to the identification based on the difference in races would be any more successful than the challenges he did raise, which ultimately proved to be fruitless, both at trial and on appeal (App. 146). The court found that trial counsel's strategy in this regard was reasonable and, therefore could not be deemed ineffective. *Id.*

Finally, the petitioner claimed that trial counsel should have emphasized the imperfections in the petitioner's statement to the police and the problems with the identification more than he did in his closing arguments (App. 146). The court did note that the petitioner's statements were basically confessions, and the trial court conducted a *Jackson v. Denno* hearing, finding the statements voluntary. *Id.* The court found that trial counsel's arguments were more than sufficient (App. 146). Further, closing arguments are inherently matters of trial strategy (App. 146-47). A court's review of closing arguments must be "highly deferential," for "counsel has wide latitude in deciding how best to represent

11

a client" and "deference to counsel's tactical decisions in his [trial counsel's] closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (App. 147). In light of *Yarborough*, the court could not find that trial counsel's closing was either deficient or prejudicial (App. 147).

In the alternative, the petitioner argued that his discovery that Jeffrey Jordan and Darryl Green could have been the perpetrators of this crime constitutes newly-discovered evidence (App. 147). First, as noted above, these witnesses did not testify, and the petitioner offered no evidence other than inadmissible hearsay and speculation as to their involvement in the crime. *Id.* The court found the petitioner had not shown that the alleged evidence met any of the requirements for after-discovered evidence (App. 147).

Based on all the foregoing, the court concluded that the petitioner had shown that he did not voluntarily waive his right to file a petition for rehearing due to appellate counsel's ineffectiveness (App. 148). Therefore, the court granted him a belated petition for rehearing. *Id.* The court further found that all his claims relating to his trial counsel were barred by the statute of limitations, and even if they were not so barred, the court found them without merit based on the testimony at the evidentiary hearing. *Id.* Therefore, the application for PCR was denied and dismissed with prejudice. *Id.*

The court advised the petitioner that he must file and serve a notice of intent to appeal within 30 days from the receipt of the PCR court's order to secure the appropriate appellate review (App. 148). His attention was also directed to South Carolina Appellate Court Rule 227 for appropriate procedures after notice had been timely filed. *Id.*

### PCR Appeal

The petitioner timely filed a notice of appeal on April 13, 2005 (App. 150). On appeal, the petitioner was represented by attorney Wesley Locklair. The petitioner perfected his appeal with the filing of a petition for writ of certiorari. In the petition, the

12

petitioner raised three arguments.  First, he argued the PCR court was correct in finding that the petitioner received ineffective assistance of appellate counsel with regard to his direct appeal.  Therefore, the petitioner was simultaneously filing a petition for rehearing in the Court of Appeals.  Second, the petitioner contended the PCR court erred in finding that the petitioner's application for PCR was barred by the statute of limitations. Third, the petitioner asserted the PCR court erred in finding that if the application was timely, he received effective assistance of trial counsel.

The petitioner also filed a petition for rehearing.  In an order filed August 22, 2006, the South Carolina Supreme Court transferred the petitioner's PCR appeal to the South Carolina Court of Appeals.  On October 5, 2007, the South Carolina Court of Appeals filed an order granting certiorari in part, denying certiorari in part, and denying the petition for rehearing.  In the order, the Court of Appeals stated the petitioner sought a writ of certiorari from the partial grant and partial denial of his application for PCR. Because there was sufficient evidence to support the PCR judge's finding that the petitioner did not knowingly and intelligently waive his right to file a petition for rehearing of the court's opinion affirming his conviction, the Court of Appeals granted certiorari on the petitioner's request for belated review of his petition for rehearing.  After a careful consideration of the petition for rehearing, the Court of Appeals was unable to discover that any material fact or principle of law had been either overlooked or disregarded and, hence, there was no basis for granting a rehearing. Therefore, the petition for rehearing was denied.  As to the petitioner's remaining issues, the petition for a writ of certiorari was denied.  The remittitur was issued on October 23, 2007.

### Second PCR Action

On September 15, 2009, the petitioner filed his second PCR (2009-CP-26-9002), alleging (1) subject-matter jurisdiction, (2) ineffective counsel, (3) due process

13

violation, (4) *Tilley v. State*, and (5) successive PCR application.  The State filed its return and motion to dismiss on March 9, 2010.

On March 19, 2010, the PCR court filed a conditional order of dismissal, noting it had reviewed the pleadings and all relevant supporting documents.  Pursuant to S.C. Code Ann. § 17-27-70(b) & (c), the PCR court found that all of the petitioner's current claims were procedurally barred.  First, the application was impermissibly successive to the previous application.  The Uniform Post Conviction Procedure Act provides:

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application.

S.C. Code Ann. § 17-27-90 (Supp. 2003).  Successive applications are disfavored and the burden is on the applicant to establish that he *could not* have raised any ground raised in a subsequent application in a previous application.  *Aice v. State*, 409 S.E.2d 392 (S.C. 1991); *Foxworth v. State*, 274 S.E.2d 415 (S.C. 1981) (emphasis added).

The petitioner had raised or could have raised his current allegations in his previous PCR application.  Therefore, the court found he could not raise them in a successive application.  The court further found that the petitioner's claim that his first PCR attorney did not raise all the issues the petitioner wanted him to raise does not entitle him to a successive application, as ineffective assistance of PCR counsel is not a recognized claim. Therefore, the PCR court summarily dismissed the application as impermissibly successive (3/19/10 Order).

In addition, the PCR court found that the application should be dismissed for the petitioner's failure to comply with the filing procedures of the Uniform Post-Conviction

Procedure Act, S.C. Code Ann. § 17-27-10 to -160 (Supp. 2003).  South Carolina Code Annotated § 17-27-45(A) reads as follows:

> An application for relief filed pursuant to this chapter must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later.

The court noted that the South Carolina Supreme Court has held that the statute of limitations shall apply to all applications after July 1, 1996.  *See Peloquin v. State*, 469 S.E.2d 606 (S.C. 1996).  The court found that the application must be summarily dismissed as time-barred.

Furthermore, the PCR court found that the petitioner had not raised any allegations that exempted him from the procedural bars discussed above.  Although the petitioner had labeled one of his claims as lack of "subject matter jurisdiction," it was clear that he was, in fact, raising a claim regarding the indictment.  Such a claim was not one regarding subject matter jurisdiction; therefore, procedural bars applied.  Further, the petitioner's claim regarding *Tilley v. State*, 511 S.E.2d 689 (S.C. 1999), and the re-ordering of sentences was without merit because the *Tilley* case was not applicable.  In *Tilley*, the defendant filed a PCR application within a year of being informed by the Department of Parole that he would, henceforth, be ineligible for parole due to the fact that his five-year mandatory sentence for possession of a weapon was consecutive to his life sentence. Under the law at the time, Tilley was supposed to be eligible for parole on the life sentence after the service of 20 years.  However, because the sentencing judge ordered the five-year sentence to be consecutive, Tilley was essentially parole ineligible.  The South Carolina Supreme Court approved the PCR court's re-ordering of Tilley's sentences, since the sentencing judge did not order that the sentences be served in any particular order, only

15

that they be served consecutively.  Therefore, Tilley was permitted to serve the five-year sentence for the weapon charge before the life sentence, which made him parole-eligible.

The court found that in the petitioner's case, the *Tilley* case did not apply for two reasons.  First, the petitioner had not received any newly-discovered information regarding his parole eligibility; therefore, the claim was procedurally barred.  Second, the petitioner's five-year sentence for criminal conspiracy was *concurrent* with his other sentences, not consecutive. It was not precluding his parole eligibility.  Therefore, there was no basis for the re-ordering of the petitioner's sentences under the auspices of *Tilley v. State*.

The PCR court stated it intended to dismiss the application for the reasons set forth above.  The petitioner was granted 20 days from the date of service of the order to show why the conditional dismissal should not become final (3/19/10 Order).  Also on March 19, 2010, the petitioner filed a return to the State's motion to dismiss.

On June 8, 2010, the petitioner filed a motion to amend post-conviction application.  The petitioner sought permission to amend his application to include the following allegations:  (1) constructive amendment of the indictment (with respect to the weapon used) in violation of *Stirone v. United States*, 361 U.S. 212, 215-17 (1960); (2) ineffective assistance of counsel in violation of *United States v. Cronic*, 466 U.S. 648 (1984), where counsel failed to put forth a defense.  No response to the conditional order of dismissal was submitted in the motion to amend.

On August 3, 2010, the PCR court filed its final order of dismissal.  The PCR Court granted the petitioner's motion to amend as to the two arguments above.  However, the PCR court found that these allegations did not entitle the petitioner to an evidentiary hearing, or to any relief, where these allegations – like his other allegations – were procedurally barred under South Carolina Code Annotated § 17-27-45(A) and § 17-27-90.

16

Therefore, the PCR court found that the petitioner had not shown a sufficient reason why the application should not be summarily dismissed.

The PCR court directed the petitioner's attention to Rules 203 and 243, South Carolina Appellate Court Rules, for the appropriate procedures to be followed in order to commence an appeal from the PCR court's order. The petitioner was served with the final order on August 10, 2010. The petitioner did not appeal the final order.

***Current Allegations***

In his federal petition now before this court, the petitioner makes the following allegations:

> **Ground One:** Petitioner was denied a fair trial and effective assistance of counsel due to counsel's failure to put up a defense in violation of 6th and 14th Amend.
>
> **Supporting Facts:** Trial counsel did not put up a defense at trial. Counsel had an enormous amount of evidence on behalf of the Petitioner to prove his innocence. Counsel had witnesses, medical records, D.N.A evidence and lots more to prove Petitioner's innocence. The jury never got a chance to hear Petitioner's account of the alleged crime because Trial Counsel decided not to put up a defense based on the "perceived weakness" of the case and alleged victim credibility.
>
> **Ground Two:** The constructive amendment of Petitioner's indictment during trial deprived him of a fair trial in violation of Due Process.
>
> **Supporting Facts:** Petitioner indictment alleges that a 22-caliber pistol was used to rob and assault the victim. During trial the prosecutor brought in that a 9mm pistol was the actual weapon used, and shell casing for a 9mm pistol was recovered at the crime scene. The Prosecutor told the jury Petitioner was the shooter even though there were no evidence of a 22-caliber pistol being used. Petitioner was found guilty of using a 9mm pistol when his indictment only charged a 22-caliber pistol.
>
> **Ground Three:** Actual Innocence
>
> **Supporting Facts:** Petitioner asserts that he is "actually innocent" of the crimes in which he was found guilty. The failure

to address the issues raised in this Petitioner would constitute a fundamental miscarriage of justice.

On September 30, 2010, the respondent filed a motion for summary judgment. By order filed October 1, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. When the petitioner failed to respond, a second order was entered on November 10, 2010, giving him through December 6, 2010, to respond. On December 8, 2010, the petitioner filed his own motion for summary judgment, to which the respondent filed a response on December 29, 2010.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, United States Code, Section 2244(d), provides:

18

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## **ANALYSIS**

The present habeas corpus petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Accordingly, the provisions of the AEDPA apply to this case. *Lindh v. Murphy*, 521 U.S. 320 (1997).  The respondent first argues[6] that the petition is untimely under the one-year statutory deadline set forth in the AEDPA.  This court agrees.  The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the

---

[6]As this court recommends that the petition be dismissed as untimely, the respondent's remaining arguments will not be addressed.

19

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). State collateral review tolls the one-year statute of limitations under § 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4ᵗʰ Cir. 2000). Further, the tolling period for state collateral review does not include the time for filing a petition for certiorari in the United States Supreme Court. 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) ("Read naturally, the text of the statute must mean that the statute of limitations is tolled only while state courts review the application. . . . [A]llowing the statute of limitations to be tolled by certiorari petitions would provide incentives for state prisoners to file certiorari petitions as a delay tactic. By filing a petition for certiorari, the prisoner would push back § 2254's deadline while we resolved the petition for certiorari. This tolling rule would provide an incentive for prisoners to file certiorari petitions – regardless of the merit of the claims asserted – so that they receive additional time to file their habeas applications").

Applying this criteria to the present case, it is clear that the petitioner did not timely file within the one-year limitations period in § 2244(d)(1)(A). The Remittitur in the petitioner's direct appeal was issued on April 8, 1999, after the Court of Appeals affirmed his conviction and sentence. The petitioner's first application for PCR was filed on November 26, 2001. However, as discussed at length above, the State agreed in the petitioner's PCR action that he was entitled to file an untimely petition for rehearing because of his appellate counsel's failure to do so. The South Carolina Court of Appeals denied the petition for rehearing in an order filed on October 5, 2007. In that same order, the court denied certiorari on the PCR appeal issues. The Remittitur was issued on October 23,

20

2007. Accordingly, as conceded by the respondent, the petitioner's conviction did not become final, and thus the statute of limitations did not begin to run, until the Remittitur was issued after the South Carolina Court of Appeals denied his petition for rehearing. Accordingly, the petitioner had one year from October 24, 2007, to file his federal habeas corpus action unless the period was at any time tolled for any properly filed state PCR application.

The deadline for the petitioner to file his federal habeas corpus petition was October 23, 2008. 28 U.S.C. § 2244(d)(2); *see also Hernandez v. Caldwell*, 225 F.3d 435, 438-39 (4th Cir.2000) (applying the anniversary date method in calculating the one-year limitation period in § 2244 and concluding that "the actual count on the limitations period began on April 25, 1996, and ended on April 24, 1997, excluding any time tolled"). The filing of the petitioner's second PCR application did not toll the AEDPA statute of limitations because it was dismissed as successive and time barred by the PCR court.[7] *Pace v. Diguglielmo*, 544 U.S. 408, 417 (2005). As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. The petitioner delivered his § 2254 petition to prison authorities for mailing to the court on July 6, 2010, the date stamped on the back of the envelope containing his petition (doc. 1-1). This was some 986 days after his conviction became final. The petitioner exceeded the statute of limitations by over a year and a half.

Furthermore, the petitioner has failed to explain why the petition is untimely and why the statute of limitations should be equitably tolled. *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). "To be entitled to equitable tolling, [the petitioner] must show

---

[7]Even if the second PCR application had been properly filed and could toll the statute of limitations, the current petition would still be untimely. The time period for filing the federal habeas petition had already expired when the second PCR action was filed on September 15, 2009.

(1)  that he has been pursuing his rights diligently, and (2)  that some extraordinary circumstances stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).  In *Harris*, the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999).  The doctrine has been applied in "two generally distinct kinds of situations.  In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant.  In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted).  But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.  To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

209 F.3d at 330.  The court went on to find:

> Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. *See Taliani*, 189 F.3d at 598 (holding that a lawyer's miscalculation of a limitations period is not a valid basis for equitable tolling); *see also Sandvik*, 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay was assertedly the result of a lawyer's decision to mail the petition by ordinary mail rather than to use some form of expedited delivery); *Fisher*, 174 F.3d at 714-15 (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Miller v. Marr*, 141 F.3d at

> 978 (same); *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254, 257 (Fed. Cir.1995) (holding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

*Id.* at 330-31.

Here, the petitioner has failed to show that he has pursued his rights diligently and that some extraordinary circumstances that were beyond his control stood in his way and prevented him from timely filing. The petitioner does not even address the respondent's statute of limitations argument in his motion for summary judgment. The petitioner has failed to show any reason for his delay in filing the instant federal petition, much less one justifying equitable tolling of the limitations period. Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 20) be granted and the petitioner's motion for summary judgment (doc. 26) be denied. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003) (affirming dismissal of petition filed one day late), *cert. denied*, 541 U.S. 905 (2004).

June 30, 2011                                         s/ Kevin F. McDonald
Greenville, South Carolina                    United States Magistrate Judge

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.